UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ETS MIR LLC, a South Dakota limited liability company, a/k/a Etablissements MIR, <br><br> Plaintiff, <br><br> v. <br><br> PETROCI HOLDING COTE D'IVOIRE, a/k/a NATIONAL OIL COMPANY OF COTE D'IVOIRE <br><br> Defendant. | **CIVIL ACTION No.** <br><br> **COMPLAINT AND JURY DEMAND** |

Plaintiff International, Inc., ETS MIR LLC, a South Dakota limited liability company also known as Etablissements MIR ("ETS MIR") by way of Complaint, alleges as follows:

## NATURE OF THE ACTION

1. This action arises from Defendant PETROCI HOLDING COTE D'IVOIRE's ("Petroci") unilateral, wrongful and unlawful purported termination of two agreements between the parties, based upon a pretext of unsupported claims of "irregular tax situation." ETS MIR seeks to reinstate and enforce the agreements and, alternatively, to recover damages for breach of the agreements.

## PARTIES

2. ETS MIR was formed as a limited liability company in the State of South Dakota on or about January 12, 2022 with Business ID # Dl218335, with a current address at 2098 Gaither Road, Suite 200, Rockville, Maryland 20850.its sole member is Biamary Coulibaly, a citizen and resident of Cote d'Ivoire.

3. PETROCI HOLDING COTE D'IVOIRE ("Petroci") is a holding company that is wholly owned by the nation of Cote d'Ivoire, and an address at PO Box V194, Abidjan Plateau, Cote d'Ivoire.

## JURISDICTION, VENUE AND CHOICE OF LAW

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1330(a) because Petroci (1) is a foreign state as defined in The Foreign Sovereign Immunities Act (FSIA) 28 U.S.C. § 1603(a), (2) is an instrumentality of a foreign state, to wit, Cote d'Ivoire and (3) is not entitled to immunity either under 28 U.S.C. §§ 1605-1607 or any applicable international agreement. Cote d'Ivoire owns 100% of Petroci. Pursuant to the FSIA, 28 U.S.C. § 1605(a)(2), a foreign state is not immune in a case as this where the action is based on a "commercial activity carried on in the United States by the foreign state," namely, contracting with a South Dakota limited liability company located in the State of Maryland.

5. Pursuant to 28 U.S.C. § 1330 and § 1608(a), this Court has personal jurisdiction over Petroci because the Agreements (defined below) expressly provide that "the parties expressly consent to the exclusive jurisdiction of the courts of New York."

6. Venue in the United States District Court for the Southern District of New York is proper pursuant 28 U.S.C. § 1391 and NY Gen. Obl. Law § 5-1402 (choice of forum) since the contract between the parties "(a) is a contract, agreement or undertaking, contingent or otherwise, in consideration of, or relating to any obligation arising out of a transaction covering in the aggregate, not less than one million dollars, and (b) which contains a provision or provisions whereby such foreign corporation or non-resident agrees to submit to the jurisdiction of the courts of this state."

7. The parties agreed that each of the two agreements "shall be governed by and construed in accordance with the laws of the United States of America." The New York Uniform Commercial Code is the applicable law to govern this dispute.

8. To the extent that the law of Cote d'Ivoire may be relevant as to certain issues not covered by New York law, including but not limited to certain tax law issues as noted below, notice is herein given of that pursuant to Rule 44.1 of the Federal Rules of Civil Procedure.

**FACTUAL ALLEGATIONS**

9. ETS MIR was formed in the United States and in particular, the State of South Dakota, for the express purpose of sourcing Liquified Petroleum Gas (LPG) Butane for Petroci.

10. Petroci holds itself out a leader it the sale and distribution of LPG Butane in Cote d'Ivoire.

11. In or about October 2021, ETS MIR initiated contact with Petroci in or about December 2021, and following four months of negotiations, on or about February 14, 2022, the parties entered into two agreements, with ETS MIR as seller and Petroci as buyer, for the provision of set amounts of metric tones of LPG Butane. One contract ("Agreement One") stated that ETS MIR was to provide 75,000 metric tons, plus or minutes 10%, to be delivered from January 1, 2022 to December 31, 2022. The second contract ("Agreement Two") provided for 100,000 metric tons to be delivered from January 1, 2023 to December 31, 2023, plus or minus 10%, and an additional 100,000 metric tons, plus or minutes 10%, to be delivered from January 1, 2024 to December 31, 2024 (collectively, the "Agreements.")

12. For both Agreements, a detailed formula for payment was set forth for determination of the price, based upon "platt's lpgaswire under the heading european LPG butane FOB nwe seagoing" [sic] plus a differential of USD $79 per metric ton VAC, with market

conditions determining the final invoice price. Both Agreements contained the same quality criteria for the LPG Butane to be provided, and both Agreements established themselves to serve as the purchase order.

13. Under the Agreements, and applying the formulas, ETS MIR anticipated that the total amount of sales would be approximately $800,000,000 USD for the terms of both of the Agreements. This was based on an average price of $1300 USD /metric ton. The invoice price offered by ETS MIR was less than other companies selling to Petroci for the same period.

14. Agreement One took effect by its terms January 1, 2022 and had a one year term. Agreement Two provided a two year term, "renewable by tacit agreement" with increased volume requirements, unless rejected in writing on eight months' notice, with an effective date of January 1, 2023 and continuing to December 31, 2024.

15. Both Agreements provided for the appointment of an independent international inspector to ascertain the quality of the samples of the LPG Butane from the shipment on each vessel. SGS Code d'Ivoire S.A. was appointed as the individual inspector.

16. On February 14, 2022, Petroci provided ETS MIR with a Butane Delivery Plan for 2022 that identified cargo numbers, quantity and laycan dates that provided for the delivery of the cargo. ETS MIR immediately commenced its activities in fulfillment of its obligations under the Agreements, and began discussions with its suppliers. One delivery was made on April 4, 2022 for 12,000 metric tons.

17. Before ETS MIR could complete its obligations under the Agreements, Petroci purported to terminate the Agreements. On or about June 3, 2022, it sent a letter to ETS MIR stating that it has been contacted by "the Ivorian tax authorities to report your irregular tax situation," and asserted that this precluded ETS MIR's ability to perform under the Agreements,

and claimed, without providing any documentation or other factual support, that ETS MIR's commercial due diligence was "unreliable," and stated that it "has decided to terminate the above-mentioned contractual relations with immediate effect."

18. No documentation or further information was provided to ETS MIR.

19. The contentions in the June 3, 2022 letter were false as a legal and factual matter. Given that ETS MIR was established just four months earlier, and that a limited liability company in the United States pays no income taxes, which income is passed to its members who then report and pay tax in the subsequent calendar year (2023) for 2022, the claim as set forth in the June 3, 2022 letter made no legal or factual sense. No specifics were identified.

20. In addition, under Ivorian law, a non-Ivorian company does not pay taxes in Cote d'Ivoire. This is further corroborated by the language of the Agreements themselves, which place the obligation for payment of all taxes, duties or fees applied on liquefied petroleum gas or cargo, on Petroci, and not on ETS MIR. The reliance on purported failure to pay taxes within months of the execution of the Agreements and in the same year sa formation of ETS MIR was bogus.

21. On June 9, 2022, ETS MIR through Ivorian counsel disputed the claims and rejected the purported termination of the Agreements.

22. On or about June 10, 2022, a meeting occurred between representatives of Petroci and ETS MIR, at which time Petroci through its chief executive officer, Vamissa Bamba ("Bamba") said there had been a "misunderstanding" and agreed to re-sign the Agreements and negate the purported termination.

ClarkHill\J6768\420293\264720455.v1-11/22/21

23. Following that, on June 16, 2022, Ouattara sent a Butane Delivery Plan for one cargo number. This was not the same as the previously agreed-upon Butane Delivery Plan established on February 14, 2022 at the time of the Agreements.

24. Agreement One called for order quantity of 75,000 metric tons plus/minus 10% for the calendar year 2022. The February 14, 2022 Butane Delivery Plan called for that 75,000 metric ton plus/minus 10% amounts. The June 16, 2002 Butane Delivery Plan reduced that amount dramatically, to 11,000 plus/minus 10% as the only delivery in 2022, in direct violation of Agreement One.

25. Meanwhile, the purported termination of June 3, 2022 had not been formally confirmed as withdrawn, and the Agreements were not re-signed. ETS MIR confirmed it could not make a July delivery as a result of the confusion and purported termination, and absence of technical, legal and contractual bases to ensure delivery in July, and the short time for setting up operational provisions of the July delivery. Consequently, ETS MIR rejected this new Butane Delivery Plan and ETS MIR remained unable to perform under the Agreements until Petroci took the corrective steps it had promised to do.

26. By email dated June 16, 2022, ETS MIR told Peroci that cargo was already scheduled to arrive during the interval of July 15-20, 2022, and that a change of the date to August 24, as the June 16, 2022 Butane Delivery Plan called for, would expose ETS MIR to demurrage charges of more than one month, and sked that the delivery program be reviewed.

27. On or about June 23, 2022 , ETS MIR sent a follow email to the General Director of Petroci, Bamba Vamissa in order to sign the new agreement as promised two weeks earlier. On or about July 23, 2022. the General Director of Petroci replied to ETS MIR to reassure him that the agreements would be re-signed as promised, but he again failed to do so.

- 6 -

28. After acknowledging its mistake, Petroci did not just re-sign the original Agreements or reinstate them, but instead submitted a modified version of those Agreements. ETS MIR noticed this and asked Petroci to reinstate and/or re-sign the original Agreements as they were. ETS MIR was ready willing and able to meet the original targets but because of absence of the reinstated Agreements with the corrected terms, ETS MIR could not proceed.

29. On or about June 27, 2022, an ETS MIR representative sent an email in response to the head of Operations and Shipping Desk to decline to delivery in the absence of re-signed Agreements or formal and confirmed negation of the purported termination. ETS MIR specifically advised of this and again asked that the "terminated" contract be re-signed. On July 23, 2022, Petroci confirmed by email that it had "noted" ETS MIR's "concerns," and "assure[d]" ETS MIR "that everything will be done to ensure that the contracts are made available on the right date." Once again, this failed to occur.

30. ETS MIR never acknowledged the legality of the purported termination of the Agreements. Despite demanding that Petroci reinstate the Agreements pursuant to its promise to do so, the Agreements were not reinstated or re-signed.

31. Only one sale was made in April 2022, prior to the purported termination of the Agreements, and another delivery was supposed to have been made after this.

32. Just a month later, Petroci purported to terminate the Agreements.

33. Since May, no further deliveries have been made, and Petroci continues to avoid its obligations under the Agreements.

34. For the period February to August 2022, ETS MIR lost approximately $90,000,000 USD in sales, and lost one of its major suppliers as a result of the wrongful

termination of the Agreements to another entity related to Petroci and managed by Brakissa Bamba, the vice director of Petroci.

35. On information and belief, the purported termination of the Agreements was politically motivated, and without legal basis.

36. At present, the Petroci is not purchasing from ETS MIR in accordance with the Agreements, thereby damaging ETS MIR. ETS MIR has been forced to sell to another company called Africa Commodities, in an attempt to mitigate its damages, which itself sells to Petroci. As a consequence, ETS MIR continues to be damaged.

## FIRST CAUSE OF ACTION-BREACH OF CONTRACT

37. ETS MIR realleges its allegations made in Paragraphs 1-35 as though realleged herein in their entirety.

38. The Agreements call for the sale of goods, namely, butane, and therefore the transaction at issue involves the sale of goods.

39. Petroci's purported termination and attribution of sales to other companies constitute breach of contract, damaging ETS MIR and entitling ETS MIR to all remedies afforded to damaged sellers under the New York Uniform Commercial Code.

40. To the extent that the Agreements purport to contain limitations of damages provisions, enforcement of same causes the Agreements to fail of their essential purposes, and ETS MIR is therefore entitled to all available remedies under the New York Uniform Commercial Code and other applicable.

## SECOND CAUSE OF ACTION-ANTICIPATORY BREACH OF CONTRACT

41. ETS MIR realleges its allegations made in Paragraphs 1-39 as though realleged herein in their entirety.

42. The acts of Petroci constitute anticipatory breach of contract by performing acts that substantially impaired the value of the Agreements to ETS MIR, damaging ETS MIR.

### THIRD CAUSE OF ACTION-COLLATERAL ESTOPPEL

43. ETS MIR realleges its allegations made in Paragraphs 1-41 as though realleged herein in their entirety.

44. The acts of Petroci constitute collateral estoppel, in that Petroci has purported to terminate the Agreements, agreed to re-sign or reinstate the Agreements, and has failed to do so, despite making a clear and unambiguous promise on or about June 10, 2022 to do so.

45. In addition, in August 2022, the legal officer of Petroci sent an email to ETS MIR's representative confirming this intention to re-sign the Agreements that Petroci purportedly terminated.

### FOURTH CAUSE OF ACTION-BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

46. ETS MIR realleges its allegations made in Paragraphs 1-44 as though realleged herein in their entirety.

47. All contracts under New York law and the New York Uniform Commercial Code impose a duty of good faith and fair dealing in the performance of the contracts.

48. This duty good faith and fair dealing covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract; where the contract contemplates the exercise of discretion, that pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion.

49. ETS MIR was formed with an effective date of January 2022, and entered into the Agreements in February 2022. It performed and made at least two sales in May 2022. Immediately after making those sales to Petroci, Petroci sent a bogus termination letter. It was bogus because its purported reliance on tax issues had not basis in law, and was timed immediately after two sales had been made.

50. On information and belief, the extraneous acts of Petroci, without providing any supporting back up either factually or legally, was part of a premeditated plan to avoid its contractual responsibilities and destroy or injure the rights of ETS MIR to the benefit of the Agreements, damaging ETS MIR.

### FIFTH CAUSE OF ACTION-SPECIFIC PERFORMANCE

51. ETS MIR realleges its allegations made in Paragraphs 1-49 as though realleged herein in their entirety.

52. As an alternative to an award of monetary damages, the Court has discretion to direct enforcement of the Agreements.

53. Here, (1) the Agreements have been pled along with their the making of the contract and its terms, including a description of the subject matter; (2) ETS MIR is and remains ready, willing, and able to perform the Agreements and has fulfilled all of its duties to date; (3) it is within Petroci's power to perform the purchase agreement, and (4) that there is no adequate remedy at law.

**WHEREFORE,** ETS MIR LLC demands judgment against Petroci Holding as follows:

1. For specific performance enforcing the Agreements;

2. Alternatively, for money damages for breach of contract, together with all other damages and remedies permitted under the New York Uniform Commercial Code;

3. For all pre-judgment interest and attorneys fees as may be allowed under law;

4. For such other relief as the Court deems appropriate.

Dated: December 1, 2022

CLARK HILL PLC

*/s/ /Steven M. Richman/*
Steven M. Richman, Esq.
Clark Hill PLC
830 Third Avenue
Suite 200
New York, NY 10022

210 Carnegie Center, Suite 102
Princeton, NJ 08540
Phone: (609) 785-2911
Fax: (609) 785-2971
Email: srichman@clarkhill.com
Counsel for Defendant ETS MIR LLC

## JURY DEMAND

ETS MIR LLC demands a trial by jury on all issues so triable.

Dated: December 1, 2022

CLARK HILL PLC

*/s/ /Steven M. Richman/*
Steven M. Richman, Esq.
Clark Hill PLC
830 Third Avenue
Suite 200
New York, NY 10022

210 Carnegie Center, Suite 102
Princeton, NJ 08540
Phone: (609) 785-2911
Fax: (609) 785-2971
Email: srichman@clarkhill.com
Counsel for Plaintiff ETS MIR LLC