UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ETS MIR LLC, a South Dakota limited liability　　　　:
company, a/k/a Etablissements MIR,　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　Plaintiff,　　　　　:　　Case No. 1:22-cv-10228 (JPO)
　　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　-against-　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　　:
PETROCI HOLDING CÔTE D'IVOIRE, a/k/a　　　　　　:
NATIONAL OIL COMPANY OF CÔTE D'IVOIRE　　　　:
and VAMISSA BAMBA, individually,　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　Defendant.　　　　　:

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF VAMISSA BAMBA'S
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT AND JURY DEMAND**

SCHWARTZ & PONTERIO, PLLC
*Attorneys for Defendants*
134 West 29th Street – Suite 1001
New York, New York 10001
Telephone: (212) 714-1200

# TABLE OF CONTENTS

Table of Authorities .......................................................................................................... iii

Preliminary Statement ....................................................................................................... 1

Statement of Facts ............................................................................................................. 2

    A.  The Parties ............................................................................................................. 2

    B.  Background ............................................................................................................. 3

    C.  The Contracts at Issue ............................................................................................ 3

    D.  Deceit by Mr. Coulibaly ......................................................................................... 4

    E.  Coulibaly's Tax Violations ...................................................................................... 6

    F.  Termination of the Contracts ................................................................................... 7

    G.  Claims Against Bamba ............................................................................................ 7

LEGAL ARGUMENT

Point I

This Court Lacks Jurisdiction Over Bamba ....................................................................... 8

    A.  Legal Standard on a Rule 12(b)(2) Motion ............................................................. 9

    B.  Plaintiff Cannot Establish General Jurisdiction Over Bamba ................................... 10

    C.  New York's Long-Arm Statute Does Not Provide Jurisdiction Over Bamba ............. 11

        1.  Bamba Does Not Transact Business in New York ............................................. 12

        2.  There Is No Connection Between The Defamation Claim
            And Any New York Business Transacted By Bamba ...................................... 14

    D.  Exercising Jurisdiction Over Bamba Would Violate The Due Process Clause ............ 15

    E.  Service on Bamba Was Improper ............................................................................ 16

Point II

The Amended Complaint Should Be
Dismissed For Forum Non Conveniens ................................................................................ 17

    A.  Plaintiff's Choice of Forum Deserves No Deference ................................................ 18

    B.  Côte d'Ivoire is an Available and an Adequate Alternative Forum ............................ 19

        1.  Bamba Can Be Sued in Côte d'Ivoire ............................................................. 19

        2.  Côte d'Ivoire is an Adequate Alternative Forum .............................................. 19

    C.  Private and Public Interest Factors Favor Hearing the Case in Cote d'Ivoire ............. 19

        1.  Private Factors - Access to Sources of Proof ................................................... 21

        2.  Private Factors - Compulsory Process and Witness Convenience ...................... 21

        3.  Public Factors - Administrative Burden ........................................................... 22

**TABLE OF CONTENTS**

4.  Public Factors - Local Interest in the Dispute ........................................................................ 22

5.  Public Factors - Relationship of Governing Law to the Forum................................................ 22

6.  Public Factors - Unfairness of Burdening Citizens With Jury Duty ....................................... 23

Conclusion.................................................................................................................................... 24

# TABLE OF AUTHORITIES

## *Cases*

*Alibaba Group Holding Ltd. v Alibabacoin Found.*,
   2018 WL 2022626 (S.D.N.Y. 2018) ...................................................................14

*Arial Techs. v. Aerophile S.A.*,
   2015 WL 1501115(S.D.N.Y. 2015) ....................................................................10

*Best Van Lines, Inc. v Walker*,
   490 F.3d 239 (2d Cir. 2007) ...........................................................................12-15

*Biro v. Nast*,
   2012 WL 3262770 (S.D.N.Y. 2012) ..................................................................12

*Burger King v. Rudzewicz*,
   471 U.S. 462 (1985) ...........................................................................................16

*Bybee v. Oper Der Standt Bonn*,
   899 F. Supp. 1217 (S.D.N.Y. 1995) ...................................................................22

*Carey v. Bayerische Hypo-Und Vereinsbank AG*,
   370 F.3d 234 (2d Cir. 2004) ..............................................................................17

*Danser v. Firestone Tire & Rubber Co.*,
   86 F.R.D. 120 (S.D.N.Y. 1980) .........................................................................23

*Fischer v. Stiglitz*,
   2016 WL 3223627 (S.D.N.Y. 2016) ...............................................................9, 14

*Int'l Shoe Co. v. Wash.*,
   326 U.S. 310 (1945) ...........................................................................................15

*Iragorri v. United Technologies Corp.*,
   274 F.3d 65 (2d Cir. 2001)..................................................................................17

*Landoil Resources Corp. v. Alexander & Alexander Servs.*, Inc.,
   918 F.2d 1039 (2d Cir.1990) ..............................................................................10

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
   673 F.3d 50 (2d Cir. 2012) ...................................................................................8

*Metro. Life Ins. Co. v. Robertson–Ceco Corp.*,
   84 F.3d 560 (2d Cir. 1996) ..............................................................................9-10

*Montalbano v. Easco Hand Tools, Inc.*,
   766 F.2d 737 (2d Cir. 1985) ..............................................................................17

*Mount Whitney Invs., LLP v. Goldman Morgenstern & Partners Consulting, LLC*,
   2017 WL 1102669 (S.D.N.Y. 2017)......................................................................9

*Moscovits v. Magyar Cukor Rt.*,
   2001 U.S. Dist. LEXIS 9252 (S.D.N.Y 2001) .......................................................23

*Opert v Schmid*,
   535 F.Supp. 591 (S.D.N.Y. 1982) ...................................................................20-22

## TABLE OF AUTHORITIES

### *Cases (cont'd)*

*Penachio v. Benedict*,
    2010 WL 4505996 (S.D.N.Y. 2010) ....................................................................12, 13

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235, 255 (1981) ...........................................................................................17-20

*Prejean v Infosys Ltd.*,
    2022 WL 4620154 (S.D.N.Y. 2022) ...........................................................................9

*Realuyo v. Villa Abrille*,
    2003 WL 21537754 (S.D.N.Y. 2003) ......................................................................15-16

*Reich v Lopez*,
    38 F.Supp.3d 436 (S.D.N.Y. 2014) .........................................................................10-11

*SPCA of Upstate New York, Inc. v. Am. Working Collie Ass'n*,
    18 N.Y.3d 400 (2012) ...............................................................................................12, 14

*Spiegel v. Schulmann*,
    604 F.3d 72 (2d Cir. 2010) .......................................................................................9

*Young v Metro. Learning Inst., Inc.*,
    2023 WL 1928001 (S.D.N.Y. 2023) ........................................................................9

### *Statutes*

CPLR § 301..........................................................................................................................9, 10

CPLR § 302.........................................................................................................................10, 22

CPLR § 302(a)......................................................................................................................9-11

CPLR § 302(a)(1)...............................................................................................................11, 14

CPLR § 302(a)(2).....................................................................................................................11

CPLR § 302(a)(3).....................................................................................................................11

CPLR § 302(a)(4).....................................................................................................................11

Fed. R. Civ. P. 4(f)...................................................................................................................16

Fed. R. Civ. P. 4(f)(2)(c)(ii)..............................................................................................16-17

Fed. R. Civ. P. 4(k)....................................................................................................................9

Fed. R. Civ. P. 12(b)(2)..............................................................................................................9

iv

## TABLE OF AUTHORITIES

### *Statutes (cont'd)*

SDCL § 47-34A-105 ...................................................................................................5-6

SDCL § 47-34A-202.1 ..................................................................................................5

SDCL § 47-34A-301 .....................................................................................................5

SDCL § 47-34A-404.1 ..................................................................................................5

### *Other*

Civil Code of Côte d'Ivoire – Article 15 ....................................................................19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ETS MIR LLC, a South Dakota limited liability    :
company, a/k/a Etablissements MIR,    :
   :
                           Plaintiff,    :    Case No. 1:22-cv-10228 (JPO)
   :
        -against-    :
   :
PETROCI HOLDING CÔTE D'IVOIRE, a/k/a    :
NATIONAL OIL COMPANY OF CÔTE D'IVOIRE    :
and VAMISSA BAMBA, individually,    :
   :
                        Defendant.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW IN SUPPORT OF VAMISSA BAMBA'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT AND JURY DEMAND

Defendant Vamissa Bamba ("Bamba" or "Defendant Bamba"), by his attorneys Schwartz & Ponterio, PLLC, respectfully submits this Memorandum of Law in support of his Motion to Dismiss (the "Motion" or "Motion to Dismiss") the Second Amended Complaint and Jury Demand (the "Amended Complaint").

### Preliminary Statement

The Second Amended Complaint asserts claims for defamation, trade libel, intentional interference with contract, and breach of fiduciary duty against Vamissa Bamba, a citizen and resident of Côte d'Ivoire, for actions and statements allegedly made by him while working for Defendant Petroci Holding Côte d'Ivoire ("Petroci" or "Defendant Petroci") in the capacity of chief operating officer ("*Directeur Général*"). Plaintiff ETS MIR LLC ("Plaintiff" or "ETS MIR") claims that Bamba falsely stated, in a letter submitted in his official capacity terminating Plaintiff's contract to supply LPG butane to Petroci, that Petroci had been contacted by "the Ivorian tax authorities to report your [ETS MIR] irregular tax situation." Plaintiff further alleges that Bamba repeated the claim of tax irregularity to government officials of Côte d'Ivoire (the

1

regional director of tax administration and the minister of mines and energy) and to Africa Commodities, an African supplier of butane and other commodities based in Côte d'Ivoire.

This is an action by a company controlled by a citizen of Côte d'Ivoire against another citizen of Côte d'Ivoire who has no contacts with New York. The claims are for defamatory statements made to government officials of Côte d'Ivoire and Africa Commodities, a company based in that country, concerning Plaintiff's alleged contract to supply butane there. Not surprisingly, the case has nothing to do with New York or the United States. Indeed, the Amended Complaint is completely devoid of any allegations that would support the exercise of jurisdiction over Bamba. In contrast, the allegations in the Second Amended Complaint have everything to do with Côte d'Ivoire where all the alleged events occurred and all the witnesses reside. For these reasons, as more fully discussed below, the Court should dismiss this action as against Bamba for lack of personal jurisdiction. Alternatively, the Court should dismiss this action on the grounds of *forum non conveniens*.

### Statement of Facts[1]

A summary of the facts relevant to this Motion is as follows:

### A.    The Parties

Plaintiff ETS MIR LLC is a South Dakota limited liability company with offices in Maryland. *SAC*, ¶ 2.[2] Defendant Petroci Holding Côte d'Ivoire is the national oil company of the Republic of Côte d'Ivoire, a nation located on the African continent nearly 5,000 miles from New York. *SAC*, ¶ 6. Defendant Bamba is a resident of Côte d'Ivoire and has worked as COO (*Directeur Général*) of Petroci. *SAC*, ¶ 8.

---

[1]  Because they are relevant as background information for this motion, Defendant Bamba incorporates the factual submissions by Defendant Petroci on its motion to dismiss.

[2]  References to the Second Amended Complaint herein shall be as "*SAC*, ¶ ____,"

B.     **Background**

Petroci has been authorized to import butane gas into the Republic of Côte d'Ivoire by order of the Ministry of Petroleum, Energy and Renewable dated March 9, 2016, in compliance with the legal and regulatory provisions of the Republic of Côte d'Ivoire. *Bery Decl.*, ¶ 5, Exhs. 1-2 (ECF # 8-1).

Petroci took the decision to purchase butane gas from a new supplier, through employees working within the commercial department of the firm, with the aim of favoring domestic suppliers and to support national trade, since Petroci is a state-owned company. *Bery Decl.*, ¶ 6 (ECF # 8-1). In this respect, Etablissement Mir was selected because it was a domestic company incorporated in Côte d'Ivoire directed by an Ivorian citizen, Biamary Coulibaly ("Coulibaly"), purporting to specialize in the import of butane gas. *Bery Decl.*, ¶ 6 (ECF # 8-1).

On November 4, 2021, a spot contract ("Contract No. 1") was concluded between Petroci and Etablissement Mir for the delivery of 10,000 metric tons of butane to Abidjan (the commercial capital of Côte d'Ivoire and its principal port) between December 22 and 24, 2021. *SAC*, ¶ 30; *Bery Decl.*, Exhs. 3-4 (ECF # 8-7, 8-8). This contract was governed by French law and subject to the exclusive jurisdiction of the Commercial Court of Paris in case of any disputes as to its interpretation or execution. See *Bery Decl.*, Exhs. 3-4 (Article 16) (ECF # 8-7, 8-8).

C.     **The Contracts at Issue**

On February 14, 2022, two additional contracts were submitted to Petroci by Etablissement Mir. *Bery Decl.*, ¶ 10, Exhs. 5-8 (Article 16)(ECF # 8-9 - 8-12). Both contracts were signed in Abidjan (Cote d' Ivoire) on  February 14, 2022. The first of these ("Contract No. 2") provided for 75,000 tons of butane to be delivered during the year 2022. *Bery Decl.*, ¶ 11, Exhs. 5-6 (ECF # 8-9, 8-10). The next contract ("Contract No. 3) provided for 100,000 tons of

butane per year to be delivered during the years 2023-2024. *Bery Decl.*, ¶ 12, Exhs. 7-8 (ECF # 8-11, 8-12).

### D.    Deceit by Mr. Coulibaly

Contracts Nos. 2 and 3 were drafted and submitted to Petroci by the company Etablissement Mir and signed by its "*Directeur Général*", Biamary Coulibaly. *Bery Decl.*, ¶ 13 (ECF # 8-1). Plaintiff ETS Mir LLC, a separate, foreign entity also controlled by Coulibaly, now claims to be the party to the later contracts, even though Coulibaly signed the contracts as "*Directeur Général*" of "Etablissement Mir" and not on behalf of plaintiff:

    

Contract No. 2, p. 8 (ECF No. 8-9)          Contract No. 3, p. 8 (ECF No. 8-11)

Oddly, Contracts Nos. 2-3 each anomalously include a stamp of "ETS MIR Trading" an entity that is not a party to this case, whose role is not explained and which does not appear to have any legal existence:

                

Contract No. 2, p. 8 (ECF No. 8-9)          Contract No. 3, p. 8 (ECF No. 8-11)

Plaintiff's deceit is further evidenced by the complete failure to comply with appropriate corporate form. Plaintiff claims to be a party to the contracts even though each of the contracts specifically identifies "Etablissement Mir"—not "ETS MIR LLC"—as the "*Vendeur*" (Seller):

Contract No. 2, p. 2 (ECF No. 8-9)                    Contract No. 3, p. 2 (ECF No. 8-11)

Only the "*Préambule*" (Preamble) of each contract (a text which is not incorporated into the contract) makes a single passing reference to "ETS MIR" and does so without any indication of its legal status, including without any reference to the jurisdiction within which it was formed or where it is headquartered. (*See* ECF Nos. 8-9, 8-11, with English translations found at ECF Nos. 8-10 and 8-12, respectively). With the sole exception of an address in South Dakota, the references in the contracts to the Seller ("*Vendeur*"), both in the caption of each of the contracts and in each signature block, are solely and exclusively to the Ivorian company "Etablissement Mir."[3] The contracts are signed in the name of "Etablissement Mir" by "*Le DIRECTEUR GENERAL*", a position which identifies the chief operating officer of an Ivorian company, but which does not exist and has no legal status under South Dakota law.[4]

---

[3] Adding an address to the name of an entity cannot change the identity of the entity. Thus, the insertion of the South Dakota address in the captions of the contracts appears to be nothing more than a concerted effort to deceive. That effort is highlighted and reinforced by the caption of this case in which Plaintiff has added to its name the telltale designation of "a South Dakota limited liability company *a/k/a Etablissement MIR*", the very name of the Ivorian company, a name that is totally unrelated to any South Dakota entity (emphasis added).

[4] The relevant South Dakota Uniform Limited Liability Company Act designates a limited liability company's managers and/or members to act on its behalf. *See, e.g.*, SDCL §§ 47-

Petroci never intended to enter into a contract with a company other than Etablissement Mir, which was chosen because of its location in the Republic of Côte d'Ivoire. *Bery Decl.*, ¶ 15 (ECF # 8-1). Had it not been misled, as a public company, Petroci, would have never entered into a butane gas supply contract giving jurisdiction to a court of the United States in case of dispute over the interpretation and implementation of the contract. *Bery Decl.*, ¶ 15 (ECF # 8-1). Petroci, acting as a state-owned company of the Republic of Côte d'Ivoire, invariably chooses either the Commercial Court of Abidjan or the Commercial Court of Paris or arbitration in France as the venue for any contractual disputes. *Bery Decl.*, ¶ 16. Petroci opts for the Paris venue and application of French law because of the proximity that exists between French law and the law applied Côte d'Ivoire's legal system. *Bery Decl.*, ¶ 16  (ECF # 8-1). Petroci's employees were misled as to the identity of the corporate signatory of the two contracts of February 2022 because of deceptive maneuvers implemented by Coulibaly relating to the Seller's ("*Vendeur*") name and identity. *Bery Decl.*, ¶ 18  (ECF # 8-1

**E.    Coulibaly's Tax Violations**

In addition to these misleading representations, and perhaps at their root, there were also tax evading maneuvers by Etablissement Mir that were revealed later to Petroci, which triggered the decision to terminate both contracts. *Bery Decl.*, ¶ 23 (ECF # 8-1). On June 2, 2022, Petroci was informed by a notice from the Ivorian Tax Authorities that a tax administrator would visit the company to collect various information concerning Etablissement Mir (Republic of Côte d'Ivoire). *Bery Decl.*, ¶ 24 (ECF # 8-1).

---

34A-202.1, 301, 404.1. It is further specified in SDCL § 47-34A-105 that: "The name of a limited liability company must contain, limited liability company, or limited company, or the abbreviation, L.L.C., LLC, L.C., or LC. Limited may be abbreviated as Ltd. and company may be abbreviated as Co." No such designation is to be found anywhere in either of the relevant contracts which are the basis for this lawsuit.

The information later given to Petroci by the tax authorities revealed that Etablissement Mir had not declared any secondary establishment, representative office, or branch outside the country, as required by law (if it had such an establishment, office or branch), though it now asserts that it was using companies located overseas, namely in the United States. *Bery Decl.*, ¶ 25 (ECF # 8-1). The tax authorities also informed Petroci that Etablissement Mir was a baking corporation and that its declared activity consisted of the sale of *pastries*. *Bery Decl.*, ¶ 26 (ECF # 8-1).

Moreover, the tax authorities alleged that the company had concealed a large part of its business turnover for the years 2021 and 2022 from them. *Bery Decl.*, ¶ 26 . Such turnover amounted to 3.3 billion CFA francs (approximately $5.3 million US dollars). *Bery Decl.*, ¶ 26 (ECF # 8-1). The tax authorities informed Petroci that this amount would be recovered by means of a Notice to Third Party Holder, that is the sum of 37 billion CFA francs would be impounded and directly paid by Petroci on behalf of Etablissement Mir since it appeared that the latter had implemented contracts with the company for this amount. *Bery Decl.*, ¶ 26 (ECF # 8-1).

**F.    Termination of the Contracts**

Following this alert from the tax authorities, Petroci decided to avoid any chance  of direct liability towards the government of Côte d'Ivoire and to terminate the two irregular contracts through a letter of termination dated June 3, 2022, addressed to Etablissement Mir. *Bery Decl.*, ¶ 26, Exhs. 11-12 (ECF # 8-15, 5-16). Appropriately, Petroci detailed and explained the reason why it was terminating the two contracts. This lawsuit ensued.

**G.    Claims Against Bamba**

Plaintiff's original claims for defamation and trade libel against Bamba are premised solely on a statement in the termination letter advising Etablissement Mir that Petroci was terminating the contract because it had been contacted by "the Ivorian tax authorities to report

your irregular tax situation…" *SAC*, ¶ 56.  Plaintiff alleges this statement was false, and claims

that Bamba "communicated the false claim of tax irregularity to Africa Commodities,"[5] and

"repeated the false statement about tax irregularities to the regional director of tax administration

and various Ivoirian politicians, including the minister of mines and energy." *SAC*, ¶¶ 106, 113.

Based on these allegations, Plaintiff has asserted claims for defamation (*SAC*, ¶¶ 100-111) and

trade libel (*SAC*, ¶¶ 112-113).

Defendant Bamba moved to dismiss the First Amended Complaint on July 6, 2023 (ECF

31). Plaintiff filed a Second Amended Complaint on August 4, 2023, adding new claims for

intentional interference with contract  (*SAC*, ¶¶ 114-126). The new claims are based, primarily,

on African press accounts of alleged misdeeds by Bamba tangentially related to plaintiff's

contract with Petroci. The Second Amended Complaint also adds a claim of breach of fiduciary

duty. (*SAC*, ¶¶ 127-133).

## LEGAL ARGUMENT

### Point I

### This Court Lacks Jurisdiction Over Bamba

No matter how many times Plaintiff amends its complaint, it cannot change the

dispositive facts that Bamba is a nondomiciliary of New York State and Plaintiff does not, and

cannot, make allegations sufficient to establish personal jurisdiction over Bamba in this case.

Three requirements must be met before a federal court may exercise personal jurisdiction over a

nondomiciliary defendant. "First, the plaintiff's service of process upon the defendant must have

been procedurally proper." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59

(2d Cir. 2012). Second, personal jurisdiction must be authorized by the long-arm statute of the

---

[5]  According to Plaintiff, Africa Commodities is "a non-party to which ETS MIR sold
butane for ultimately delivery to Petroci." *SAC*, ¶ 92.

state in which the court is located. *Id.* at 59-60 (*citing Spiegel v. Schulmann*, 604 F.3d 72, 76 (2d Cir. 2010)); *see also* Fed. R. Civ. P. 4(k)(1)(A). Finally, "the exercise of personal jurisdiction must comport with constitutional due process principles." *Licci*, 673 F.3d at 60; *Fischer v. Stiglitz*, 15-CV-6266(AJN), 2016 WL 3223627 (S.D.N.Y. June 8, 2016). As shown herein, Plaintiff cannot meet any of these criteria for personal jurisdiction over Defendant Bamba.

## A.    Legal Standard on a Rule 12(b)(2) Motion

On a Rule 12(b)(2) motion to dismiss, "[i]t is the plaintiff's burden to establish jurisdiction over a defendant." *Young v Metro. Learning Inst., Inc.*, 22-CV-1722 (JPO), 2023 WL 1928001, at *2 (S.D.N.Y. 2023)(*citing Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 566–67 (2d Cir. 1996)). "To meet this burden, the plaintiff must plead facts sufficient for a *prima facie* showing of jurisdiction." *Mount Whitney Invs., LLP v. Goldman Morgenstern & Partners Consulting, LLC*, No. 15 Civ. 4479 (ER), 2017 WL 1102669, at *3 (S.D.N.Y. Mar. 23, 2017). A court may rely on materials submitted by the parties outside of the complaint. *Id.* Plaintiff, however, "may not rely on conclusory statements without any supporting facts, as such allegations would lack the factual specificity necessary to confer jurisdiction." *Id.* (internal quotations omitted).

The determination of personal jurisdiction involves a two-step process. "In New York, the court must first determine whether personal jurisdiction is appropriate pursuant to the state's general jurisdiction statute, Civil Practice Law and Rules ("C.P.L.R.") § 301, or its long-arm jurisdiction statute, C.P.L.R. § 302(a)." *Prejean v Infosys Ltd.*, 20-CV-8018 (JPO), 2022 WL 4620154, at *3 (S.D.N.Y. 2022). If the court's exercise of personal jurisdiction is deemed appropriate according to New York law, "the second step is an evaluation of whether the court's exercise of personal jurisdiction comports with the Fifth Amendment's Due Process Clause." *Id.* As set forth more fully below, Plaintiff's Amended Complaint does not meet either requirement.

**B.      Plaintiff Cannot Establish General Jurisdiction Over Bamba**

For a plaintiff to demonstrate personal jurisdiction over a defendant under New York state law, the plaintiff must show "either that the defendant was 'present' and 'doing business' in New York within the meaning of [CPLR] § 301, [general jurisdiction], or that the defendant committed acts within the scope of New York's long-arm statute, [CPLR] § 302, [specific jurisdiction]." *Reich v Lopez*, 38 F.Supp.3d 436, 454 (S.D.N.Y. 2014).

Under CPLR § 301, a court may exercise general jurisdiction over "any defendant that is engaged in such a continuous and systematic course of doing business [in New York] as to warrant a finding of its presence in this jurisdiction." *Arial Techs. v. Aerophile S.A.*, No. 14 CV 4435, 2015 WL 1501115, at *7 (S.D.N.Y. March 31, 2015)(Preska). To meet this standard, a plaintiff must show that a defendant engaged in "continuous, permanent, and substantial activity in New York." *Landoil Resources Corp. v. Alexander & Alexander Servs.*, Inc., 918 F.2d 1039, 1043 (2d Cir.1990); *see also Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 567–68 (2d Cir.1996) ("Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's continuous and systematic general business contacts.").

Here, Plaintiff fails to allege even a single transaction in, or contact with, New York on behalf of Bamba, let alone "a continuous and systematic course of doing business." Indeed, Plaintiff admits that Bamba is domiciled outside of New York and, in fact, outside of the United States. *SAC*, ¶ 8.[6] The only direct contact alleged between Bamba and the United States is that Bamba visited Houston once for the World Petroleum Congress. *SAC*, ¶¶ 29, 109 Accordingly,

---

[6]  Plaintiff alleges that "Bamba is subject to jurisdiction in New York for personally or through an agent transacting business within New York to supply goods or services within New York, " (*SAC*, ¶ 21) suggesting that Petroci, Bamba's employer, should be considered ***his*** agent for jurisdictional purposes. This turns agency law on its head and should not be considered.

10

this Court may not exercise general jurisdiction over Bamba. *Reich, supra,* at 63 (holding that a defendant's contact with New York was insufficient to extend general jurisdiction over him even where the non-domiciliary had relationships with New York banks and law firms and owned an apartment in New York but spent fewer than 5% of his time in New York).

**C.      New York's Long-Arm Statute Does Not Provide Jurisdiction Over Bamba**

Under CPLR § 302(a), a Court, alternatively, may exercise specific jurisdiction "[a]s to a cause of action arising from any of the acts enumerated in this section" over any non-domiciliary who:

   1.    Transacts any business within the state or contracts anywhere to supply goods or services in the state; or

   2.    Commits a tortious act within the state, ***except as to a cause of action for defamation of character*** arising from the act; or

   3.    Commits a tortious act without the state causing injury to person or property within the state***, except as to a cause of action for defamation of character*** arising from the act, if he: (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

   4.    Owns, uses or possesses any real property situated within the state.

CPLR § 302(a) (emphasis added).

Here, by their express terms, CPLR §§ 302(a)(2) and (a)(3) specifically exclude claims for defamation and therefore cannot be a basis for jurisdiction. CPLR § 302(a)(2) is also inapplicable because Plaintiff does not allege that the defamatory statements were made "within New York." CPLR § 302(a)(4) is inapplicable because Bamba owns no property in New York. *Bamba Decl.*, ¶ 7. The only remaining provision – CPLR § 302(a)(1) – is also inapplicable here because, as set forth below, the Second Amended Complaint does not allege, and Plaintiff cannot

establish, that Bamba transacts any business in New York or that the claim arose from Bamba's actions in New York.

### 1.    *Bamba Does Not Transact Business in New York*

"To determine whether a defendant is subject to jurisdiction under 302(a)(1), the court must decide (1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action arises from such a business transaction." *Biro v. Nast*, 2012 WL 3262770, at *9 (S.D.N.Y. 2012) (Oetken, J.). Transacting business for the purposes of CPLR § 302(a)(1) requires "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Best Van Lines, Inc. v Walker,* 490 F.3d 239, 246 (2d Cir. 2007)(internal citations omitted).

New York courts, however, conduct a particularly rigorous analysis of jurisdiction in connection with defamation claims. Plaintiffs alleging defamation must show "something more" than simply availing oneself of the privilege of conducting business. *Penachio v. Benedict*, No. 10 Civ. 371 (SCR)(PED), 2010 WL 4505996, at *3 (S.D.N.Y. Nov. 9, 2010) (Preska). They must show a "stronger connection" between the alleged defamation and defendant's alleged business activities in New York. *Id.* As the Court of Appeals has explained:

> Through CPLR 302, the Legislature has manifested its intention to treat the tort of defamation differently from other causes of action and we believe that, as a result, particular care must be taken to make certain that non-domiciliaries are not haled into court in a manner that potentially chills free speech without an appropriate showing that … the proper nexus exists between the transaction and the defamatory statements at issue.

*SPCA of Upstate New York, Inc. v. Am. Working Collie Ass'n*, 18 N.Y.3d 400, 405-406 (2012).

Thus, for a defendant to sufficiently "transact business" in New York for the purposes of a defamation claim, the plaintiff must demonstrate "not only [] extensive in-state activities

relating to the defamatory act but also a specific connection between the defamatory act and activities undertaken by the defendant in New York." *Penachio*, 2010 WL 4505996, at *3 (Preska) (emphasis added) (holding that the Court could not exercise personal jurisdiction over defendants because they had not purposefully availed themselves of the privilege of doing business in New York and "the preparation and dissemination of the defamatory material" occurred outside of New York). *Id.* at *4. *See also Best Van Lines*, 490 F.3d at 248-249 ("when the defamatory publication itself constitutes the alleged transaction of business" in the State, the plaintiff must demonstrate "something more") (internal quotations and citations omitted).

The Second Amended Complaint's failure to allege any activities in New York by Bamba, let alone any "specific connection" between the alleged defamatory statements and activities in New York, is therefore fatal to the attempt to establish a basis for jurisdiction. As set forth in his declaration, Bamba has no contacts whatsoever with New York, let alone sufficient in-state activities relating to the defamation claims to confer personal jurisdiction. Indeed, Bamba has never been to New York (other than in the process of transferring to a connecting flight at a New York airport), he owns no property here, and he has not conducted any business here. *Bamba Decl.*, ¶ 7.

Plaintiff's allegations, and the facts established by the Bamba Declaration, therefore, fall far short of establishing any "purposeful availment" of the privilege of doing business in New York. See *Penachio*, 2010 WL 4505996, at *3-4 (while non-domiciliary defendants "observed proceedings in New York, contacted parties to the proceedings, and allegedly [had] some profit-making objective related to [the] proceedings," the connection between the defendants' publishing of YouTube videos in Colorado accusing the plaintiffs of professional misconduct in the New York proceedings and the defendants' dealings in New York was "insufficient" to find

defendants had "purposefully availed themselves of the privilege of doing business in New York").

### 2.   There Is No Connection Between The Defamation Claim And Any New York Business Transacted By Bamba

Plaintiff likewise cannot establish that its defamation claims "arise from" any transaction of business in New York. Claims only "arise from" activities in New York if there is an "articulable nexus," or a "substantial relationship," between the claim asserted and the actions that occurred in New York. *Best Van Lines*, 490 F.3d at 249-250. "An articulable nexus exists where the claim is 'in some way arguably connected to the transaction.'" *Alibaba Group Holding Ltd. v Alibabacoin Found.*, 18-CV-2897 (JPO), 2018 WL 2022626, at *5 (S.D.N.Y. 2018); *Fisher v. Stiglitz*, No. 15-CV-6266 (AJN), 2016 WL 3223627, at *7 (S.D.N.Y. 2016) (finding lack of jurisdiction over authors of a beekeeping guide who had allegedly defamed an owner of a line of beekeeping products even where they had purchased honey from a New York-based seller, sold honey to retailers in New York, contracted with a New York-based publisher to publish their beekeeping guide, and attended conferences in New York, because, "[a]bsent any allegation that a significant financial interest unique to New York motivated the alleged defamation" the connection between the defendants' activities in New York and the allegedly defamatory statements was "too tangential"); *SPCA*, 18 N.Y.3d 400 at 405 (finding no "substantial relationship" between defamatory statements and the defendant's New York activities). Plaintiff thus cannot satisfy the rigorous requirements of CPLR § 302(a)(1).

In summary, in its efforts to argue that this Court has jurisdiction, Plaintiff alleges that "Bamba is subject to personal jurisdiction in New York for personally or through an agent transacting business within New York to supply goods or services within New York." (SAC ¶21) However, neither contention is accurate.  Plaintiff alleges no facts that establish that either

14

Petroci or Bamba personally transacted business in New York.  It is Plaintiff's contention (an inaccurate contention) that Petroci engaged in business in New York, even though every action cited by Plaintiff occurred outside of New York, and that in such business Petroci was Bamba's agent.  However, even if Plaintiff could successfully have argued that Petroci had engaged in business in New York (which it did not), Petroci was assuredly not Bamba's agent.  At best, it could have been argued that Bamba could have been Petroci's agent.  However, even that argument does not stand the test of scrutiny.  Bamba signed the contracts in contention in Abidjan as an officer of Petroci, but never in his personal capacity nor as an agent of Petroci.  Furthermore, Plaintiff's claims against Bamba do not involve the transacting of any business but rather solely allege (without substantiation) defamation, trade libel, interference with contract and breach of fiduciary duty (not of a duty to ETS MIR, but rather of a duty to Petroci – the Ivorian company situated in Côte d'Ivoire - and then only through Petroci in Côte d'Ivoire to Petroci's creditors).  Thus, there are simply no grounds, whether on the basis of general jurisdiction or long-arm statute jurisdiction, on which New York courts have jurisdiction over Bamba.

**D.      Exercising Jurisdiction Over Bamba Would Violate The Due Process Clause**

Even were Plaintiff able to show a basis for this Court to exercise personal jurisdiction over Bamba under New York law (which it cannot do), exercising such jurisdiction would offend due process. To exercise personal jurisdiction over out-of-state defendants, the Due Process Clause requires that the defendants have sufficient "minimum contacts" with New York. *Best Van Lines*, 490 F.3d at 242 (*citing Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). A plaintiff must establish that: (1) the defendant "purposefully directed" its activities to New York residents; (2) the litigation results from alleged injuries arising out of or related to those activities; and (3) the exercise of jurisdiction is "reasonable such that the exercise of jurisdiction

would comport with fair play and substantial justice." *Realuyo v. Villa Abrille*, No. 01 Civ. 10158 (JGK), 2003 WL 21537754, at *8 (S.D.N.Y. July 8, 2003) (*citing Burger King v. Rudzewicz*, 471 U.S. 462, 477 (1985)) (internal quotations omitted).

In its Second Amended Complaint, Plaintiff does not allege that the alleged defamatory comments were "purposefully directed" to residents of New York. Instead, the alleged statements were made, and heard when made, outside New York, indeed, outside the United States. Moreover, the exercise of personal jurisdiction here would offend any notion of fair play and substantial justice due to the significant burden on Bamba to defend this case in New York, when he lives in Côte d'Ivoire and does not travel to New York. See *Realuyo*, 2003 WL 21537754, at *8 (finding that exercise of jurisdiction over foreign defendants would offend notions of fair play and substantial justice due to the substantial burden of litigation in New York).

**E.     Service on Bamba Was Improper**

Finally, the Court should dismiss the Second Amended Complaint because Bamba has not been properly served. Despite the lapse of almost three months since Plaintiff filed the Amended Complaint, Plaintiff still has not made proper service on Bamba. Service upon foreign individuals is governed by Rule 4(f) of the Federal Rules of Civil Procedure. Because Côte d'Ivoire is not a party to any internationally agreed means of service with the U.S., service upon an Ivorian citizen is governed by Rules 4(f)(2) and (3). In the absence of the directive of a court or foreign authority, as here, the applicable provisions are Rules 4(f)(2)(A) and (C)(ii). Rule 4(f)(2)(A) allows for service "in the manner prescribed by the law of the foreign county for service in that country in an action in any of its courts of general jurisdiction." Fed. R. Civ. P. 4(f)(2)(A). Alternatively, Rule 4(f)(2)(C)(ii) allows for service by "any form of mail requiring a

16

signed receipt, to be addressed and dispatched by the clerk of the court to the party to be served" "unless prohibited by the law of the foreign country." Fed. R. Civ. P. 4(f)(2)(C)(ii).

Here, it is unclear how exactly Plaintiff contends service was made. The proof of service filed by Plaintiff (ECF # 38) provides an incomplete explanation of how service was made. The translation seems to indicate that the process server went to the offices of Petroci on several occasions. On one of these trips, he claims to have delivered "a summons in civil matters" and "notification of subpoena" to an individual named Koware Antoinette, who claimed to be Bamba's secretary. He claims later to have returned and "summoned the second Secretary to whom I gave and left a copy of my exploit accompanied by the mail, on the question of whether she gave them to Mr. VAMISSA BAMBA. To this interrogation, she declared this: 'I gave them to him by hand, the same day.'" ECF # 38. This is insufficient service.

In the absence of an applicable international treaty, as here, service of a foreign judicial complaint must be made in accordance with the law of the location of service. The alleged method of service on Bamba is not recognized under Ivorian law, which provides that service must be personal and must be accompanied with a French translation. *Bayeron Decl.,* ¶¶ 9-11, Exhs. 1-6. Because Plaintiff has failed to effect proper service upon Bamba, the Court should dismiss the claims against him. *Montalbano v. Easco Hand Tools, Inc.*, 766 F.2d 737, 740 (2d Cir. 1985) (district courts have broad discretion to dismiss for insufficient service).

### Point II

### The Court Should Dismiss the Second Amended Complaint For *Forum Non Conveniens*

Should this Court nonetheless decide to exercise personal jurisdiction over Bamba, the Court should nevertheless dismiss the Amended Complaint for *forum non conveniens*. Dismissal on *forum non conveniens* grounds is within the sound discretion of the trial court and is proper

when the court: (1) determines that plaintiff's choice of forum is not entitled to deference over defendant's proposed alternative forum, (2) determines that the alternative forum is adequate to adjudicate the dispute, and (3) balances the private and public interests in favor of the defendant's proposed alternative forum. *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73 (2d Cir. 2001). Dismissal is appropriate here where the Plaintiff's chosen forum bears no connection to the cause of action, imposes a heavy burden on the defendants and the Court, and an adequate alternative forum – the courts of Côte d'Ivoire - is available.

## A.    Plaintiff's Choice of Forum Deserves No Deference

Although a plaintiff's choice of his home forum is ordinarily given deference, plaintiff's choice is not dispositive and can be overcome. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981); *Iragorri*, 274 F.3d at 70. Plaintiff's choice of forum is entitled to less deference when it is not the plaintiff's home district. *Iragorri*, 274 F.3d at 71 ("We are instructed that the degree of deference given to a plaintiff's forum choice varies with the circumstances. We are told that plaintiff's choice of forum is generally entitled to great deference when the plaintiff has sued in the plaintiff's home forum."). Additionally, "diminished ... weight [is] accorded a plaintiff's choice of forum where... the cause of action does not have significant ties to the plaintiff's home forum." *Carey v. Bayerische Hypo-Und Vereinsbank AG*, 370 F.3d 234, 237 (2d Cir. 2004). Finally, "the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons ... the less deference the plaintiff's choice commands." *Iragorri*, 274 F.3d at 72.

Applying these factors to this case, the Court should not accord Plaintiff's choice of a New York forum any deference. Plaintiff is not domiciled in New York. *SAC*, ¶ 2. Moreover, the Amended Complaint alleges defamation claims based on alleged statements **made by an Ivorian citizen to Ivorian government authorities and Africa Commodities, a supplier of butane and other commodities located in Abidjan**. *SAC*, ¶ 94-105; *Bamba Decl.*, ¶ 11. This suit has no

connection whatsoever to New York and Plaintiff's decision to sue here is plainly forum-shopping.

**B.      Côte d'Ivoire is an Available and an Adequate Alternative Forum**

      *1.      Bamba Can Be Sued in Côte d'Ivoire*

Article 15 of the Civil Code of Côte d'Ivoire provides that all claims against a citizen of Cote d'Ivoire must be brought before a Court of Côte d'Ivoire, even for his undertakings abroad towards a foreigner. The law of Côte d'Ivoire, like French civil law, recognizes exclusive jurisdiction of the Courts of Côte d'Ivoire whenever one of its citizens is a party and Bamba avails himself of this right. *Bayeron Decl.*, ¶ 6-8, Exhs. 2, 5 (Article 15 of the Civil Code of Ivory Coast).

Bamba is unquestionably subject, and consents, to jurisdiction in Côte d'Ivoire where he resides and he claims jurisdiction there. *Bamba Decl.*, ¶ 14; *Bayeron Decl.*, ¶ 6-8, Exhs. 2, 5. The same is true of Petroci. *See Schwartz Decl.*, ¶ 6 (ECF 8-3). An alternative forum is available if the defendant is amenable to process there. *Piper*, 454 U.S. at 255 n.22.

      *2.      Côte d'Ivoire is an Adequate Alternative Forum*

Bamba joins in the arguments raised by Petroci in its *forum non conveniens* dismissal motion showing that Côte d'Ivoire is an adequate forum for this litigation. *See* ECF 8-02, 8-04 at 13-14. Bamba further notes that Côte d'Ivoire provides remedies for defamation claims. *Bayeron Decl.*, ¶¶ 7-8.

**C.      Private and Public Interest Factors Favor Hearing the Case in Cote d'Ivoire**

If the Court determines that there is an adequate alternative forum, it must next weigh the public and private factors to determine if the balance of convenience favors the alternative forum. The private factors include:

> [A]ccess to sources of proof; availability of compulsory process for attendance of
> unwilling, and the cost of obtaining attendance of willing, witnesses ... and all
> other practical problems that make trial of a case easy, expeditious and
> inexpensive.

*Piper*, 454 U.S. at 241 n.6.

> In analyzing the public factors, the court looks at:

> [T]he administrative difficulties flowing from court congestion; the local interest
> in having localized controversies decided at home; the interest in having the trial
> of a diversity case in a forum that is at home with the law that must govern the
> action; the avoidance of unnecessary problems in conflict of laws, or in the
> application of foreign law; and the unfairness of burdening citizens in an
> unrelated forum with jury duty.

Piper, 454 U.S. at 241 n.6.

In *Opert v Schmid*, 535 F.Supp. 591, 592 (S.D.N.Y. 1982), a defamation case similar to this case, this Court (Judge Lasker) determined that the private and public interest factors required dismissal. Plaintiff in that case, a New York resident, filed a defamation lawsuit against a British company for statements made in a German automotive magazine published in Switzerland. *Opert*, 535 F. Supp. at 592. Defendant sought dismissal on *forum non conveniens* grounds, because, other than the plaintiff's domicile, the case had no connection to New York. The court dismissed, finding that the private and public interest factors pointed to a German forum.

The relevant private interest factors included that "each alleged defamatory statement was made in Europe," and that "many of the defendant's witnesses and… some of the plaintiff's witnesses reside in Europe." *Id.* at 595. Additionally, "the alleged statements were made in the German language to German-speaking persons and published in German-language periodicals." *Id.* Finally, the court also found that "translations would be necessary not only for significant parts of the testimony, but also for the allegedly defamatory statements themselves." *Id.*

The relevant public interest factors included the court's finding that the case was "likely to be judged by West German law." *Id.* Additionally, the court found that "[i]n light of the lack of relationship of the occurrences with New York, the state's interest in the litigation is minimal." *Id.* Finally, the court noted that "the circulation of the allegedly defamatory statements in New York was at best insubstantial; they were primarily distributed in West Germany and other European countries." *Id.* A balancing of the private and public factors here should lead this Court to the same conclusion.

### 1.    *Private Factors - Access to Sources of Proof*

Just as in *Opert*, there is no probative evidence in New York. First, the claims appear to be based entirely on events that occurred in Côte d'Ivoire. Plaintiff claims that the defamatory statements were made to "Africa Commodities, the regional [ Ivorian ] director of tax administration, and the minister of mines and energy." *SAC*, ¶ 104. Information from these entities is clearly not available in New York and Plaintiff's factual allegations have no New York connection.

### 2.    *Private Factors - Compulsory Process and Witness Convenience*

As in *Opert*, any witnesses to the statements in question are located in Côte d'Ivoire, not in New York or elsewhere in the United States. Those in Côte d'Ivoire are clearly subject to the jurisdiction of an Ivorian court. There are no witnesses to Bamba's allegedly defamatory statements in the United States. If unwilling, these witnesses cannot be compelled to testify in the United States. It is clearly more convenient for willing witnesses to appear for trial in Côte d'Ivoire than here. Thus, if the case goes forward in New York, Bamba will be forced to incur further significant expense and inconvenience and may not be able to obtain relevant testimony of Ivorian witnesses crucial to his defense.

### 3. *Public Factors - Administrative Burden*

If this case is heard in New York, the administrative burden would be substantial. As in *Opert*, significant parts of the trial testimony would require translation, as the statements are alleged to have been made by Ivorian citizens in French. Most of the relevant witnesses are French-speakers and will require interpreters, significantly increasing the amount of time needed to complete testimony at trial.

### 4. *Public Factors - Local Interest in the Dispute*

The alleged defamatory statements which are at the core of Plaintiff's claims against Bamba were made in French in Côte d'Ivoire by an Ivorian citizen to Ivorian government officials and Africa Commodities, a company located in Côte d'Ivoire. There is no connection between the alleged defamatory statements and New York and none of the parties are domiciled here. Indeed, as noted above, New York's long arm statute specifically excludes defamation claims where the defamation occurs without the state but causes injury within the state. C.P.L.R. § 302. Although not controlling here, where the issue is convenience and not jurisdiction, this statute strongly suggests that New York has no interest in adjudicating foreign defamation cases such as this one. To the contrary, Côte d'Ivoire has an interest in adjudicating cases alleging defamatory statements made in that country.

### 5. *Public Factors - Relationship of Governing Law to the Forum*

The issues in this case will be governed by Ivorian law. As in *Opert*, this factor militates in favor of dismissal. It is a burden for this Court to determine and apply Ivorian law in a case with no connection to this forum. *See Bybee v. Oper Der Standt Bonn*, 899 F. Supp. 1217, 1223 (S.D.N.Y. 1995) ("The need to apply foreign law is a factor that weighs in favor of dismissal. ... Although this Court is able to apply German law when necessary, it makes no pretense that it could do so as knowledgeably or as efficiently as German tribunal.") (internal citations omitted);

22

*Moscovits v. Magyar Cukor Rt.*, 2001 U.S. Dist. LEXIS 9252, at *21-22 (S.D.N.Y July 9, 2001) ("The Court also recognizes the interest in avoiding unnecessary complexities associated with the application of foreign law.").

### 6.   *Public Factors - Unfairness of Burdening Citizens With Jury Duty*

Given the absence of any connection of this case to New York, it would be unfair to ask jurors to serve in a trial with potentially unavailable witnesses and extensive testimony provided through translation. *See Danser v. Firestone Tire & Rubber Co.*, 86 F.R.D. 120, 123 (S.D.N.Y. 1980) ("[I]t would indeed be an injustice to impose the burden of jury duty upon the people of a community having no relation to the litigation."). This factor too points to dismissal.

In short, this case has no connection to this forum and trial here would place a heavy burden on Bamba and the Court. Because this case has an overwhelming connection to Côte d'Ivoire, it should be adjudicated there, if anywhere, and the Court should dismiss this action.

**Conclusion**

For the reasons discussed herein, Defendant Vamissa Bamba respectfully requests that the Court grant his Motion and dismiss the Second Amended Complaint as against him, without prejudice to Plaintiff refiling the case in Côte d'Ivoire, and that it grant such further relief as it deems just and proper, including the costs and attorneys' fees for this Motion.

Dated: New York, New York
        September 15, 2023

                                        SCHWARTZ & PONTERIO, PLLC
                                        *Attorneys for Defendants*

By: _____
                                        Matthew F. Schwartz
                                        134 West 29th Street – Suite 1001
                                        New York, New York 10001
                                        Telephone: (212) 714-1200

24