UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――――――――

ETS MIR LLC,

                         Plaintiff,

          -v-

PETROCI HOLDING COTE D' IVOIRE, *et al.*,

                         Defendants.

22-CV-10228 (JPO)

OPINION AND ORDER

―――――――――――――――――――――――――――――――

J. PAUL OETKEN, District Judge:

    Plaintiff ETS MIR LLC ("ETS MIR") brings this action against Defendants Petroci Holding Cote d'Ivoire ("Petroci") and Vamissa Bamba, the Director General of Petroci, for breach of contract, anticipatory breach of contract, breach of the implied covenant of good faith and fair dealing, defamation, and trade libel. Presently before the Court is Petroci's motion to dismiss the complaint based on *forum non conveniens*.

**I.    Background**

    **A.    Factual Background**

    The following facts are drawn from the First Amended Complaint and are assumed to be true for purposes resolving Petroci's motion to dismiss. (ECF No. 14 ("Compl.").) ETS MIR is a limited liability company formed under the laws of South Dakota. (*Id.* ¶ 2.) The sole member of ETS MIR is Biamary Coulibaly, a citizen and resident of Cote d'Ivoire. (*Id.*) ETS MIR is a distinct entity from Etablissement MIR, which is formed under the laws of Cote d'Ivoire and is registered in Cote d'Ivoire as a "société à responsabilité limitée" (SARL), which is a private limited liability company. (*Id.* ¶ 4.) Coulibaly is one of the three shareholders of Establissement MIR SARL. (*Id.*) Petroci is the national oil company of Cote d'Ivoire. (*Id.* ¶ 6.) Vamissa

1

Bamba, who is a resident of Cote d'Ivoire, was at all relevant times the Director General of Petroci. (*Id.* ¶ 8.)

On or about November 4, 2021, Etablissement MIR SARL entered into a contract with Petroci for the sale of butane gas. (*Id.* ¶ 25.) The contract stated that Etablissement MIR SARL would provide 10,000 metric tons, plus or minus 10%, to be delivered between December 22, 2021, and December 24, 2021. (*Id.*) Etablissement MIR SARL's name and address in Cote d'Ivoire were stated in the contract. (*Id.*) This initial contract was completed and is not at issue in this case. (*Id.*) This initial contract was limited to the 10,000 metric tons and was non-renewable. (*Id.* ¶ 26.) Coulibaly determined that "[i]n order to gain larger and longer-term contracts, . . . [he needed] more resources and international suppliers," and he decided to form ETS MIR LLC in the United States for this purpose. (*Id.*) On or about January 12, 2022, Coulibaly formed ETS MIR LLC. (*Id.* ¶ 27.)

On or about February 14, 2022, ETS MIR and Petroci entered into two new agreements for the sale of butane gas, which are at issue in this case. (*Id.* ¶ 30.) The first contract stated that ETS MIR would provide 75,000 metric tons, plus or minus 10%, to be delivered from January 1, 2022, to December 31, 2022. (*Id.*) The second contract stated that ETS MIR was to provide 100,000 metric tons, plus or minus 10%, to be delivered from January 1, 2023, to December 31, 2023, and an additional 100,000 metric tons, plus or minus 10%, to be delivered from January 1, 2024, to December 31, 2024. (*Id.*) Both agreements stated ETS MIR's name and address in South Dakota, and both ETS MIR and Petroci signed both agreements. (*Id.* ¶ 35.)

Both contracts between ETS MIR and Petroci include choice of law and forum selection clauses. Article 15 of the first contract states: "This Agreement shall be governed by and construed in accordance with the laws of the United States of America. The parties expressly

consent to the exclusive jurisdiction of the commercial courts of New York." (*Id.* ¶ 37; ECF No. 8-10 Art. 15.) Article 15 of the second contract states: "This Agreement shall be governed by and construed in accordance with the laws of the United States of America. The parties expressly consent to the exclusive jurisdiction of the courts of New York." (Compl. ¶ 37; ECF No. 8-12 Art. 15.) Bamba's signature on behalf of Petroci appears on both the first and second contract directly below Article 15, which is the final article in both contracts. (Compl. ¶ 38; ECF No. 8-10 Art. 15; ECF No. 8-12 Art. 15.) Both the first and second contract were reviewed by Bamba and Petroci's legal department, including the Director of the Commercial Contracts Department, the Director of Petroleum Products Trading, and the Vice-Director of the Commercial Contracts Department. (*Id.* ¶ 39.)

On or about June 3, 2022, Petroci sent a letter to ETS MIR stating that Petroci had been contacted by "the Ivorian tax authorities to report [ETS MIR's] irregular tax situation," and that as a result, Petroci had "decided to terminate the . . . contractual relations with immediate effect." (*Id.* ¶ 50.) ETS MIR denies these allegations. (*Id.* ¶ 52.) On June 9, 2022, ETS MIR, through Ivorian counsel, disputed the claims and rejected the purported termination of the first and second contracts. (*Id.* ¶ 59.) On or about June 10, 2022, a meeting occurred between representatives of Petroci and ETS MIR, during which Petroci stated that there had been a "misunderstanding" and agreed to re-sign the two contracts and negate the termination. (*Id.* ¶ 60.) After further disagreement between ETS MIR and Petroci, Petroci reneged on its agreement to reinstate the two contracts. (*Id.* ¶¶ 61-71.)

**B.     Procedural History**

ETS MIR commenced this action on December 2, 2022. (ECF No. 1.) Petroci filed its motion to dismiss on March 15, 2023. (ECF No. 8.) ETS MIR filed its first amended complaint on March 29, 2023. (ECF No. 14.) On April 12, 2023, Petroci filed a letter stating that it would

rely on its initial motion to dismiss.  (ECF No. 17.)  ETS MIR filed its opposition to Petroci's motion to dismiss on May 19, 2023.  (ECF No. 22.)  Petroci filed its reply in support of its motion to dismiss on June 9, 2023.  (ECF No. 27.)

II.     **Claims Against Petroci**

  A.     *Forum Non Conveniens* **and Forum Selection Clause**

Although Petroci brings its motion to dismiss pursuant to Fed. R. Civ. Pr. 12(b)(3), the Supreme Court has clarified that "[t]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*."  *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 60 (2013); *see also Rabinowitz v. Kelman*, 75 F.4th 73, 80 (2d Cir. 2023); *Martinez v. Bloomberg LP*, 740 F.3d 211, 216 (2d Cir. 2014).  The Court thus analyzes Petroci's motion under the doctrine of *forum non conveniens*.  "[I]n evaluating a motion to dismiss based on a forum selection clause, a district court typically relies on pleadings and affidavits." *Martinez*, 740 F.3d at 216.

Under the doctrine of *forum non conveniens*, "a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Fasano v. Li*, 47 F.4th 91, 100 (2d Cir. 2022) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947)).  In a case that does *not* involve a forum selection clause, a court must assess the following factors to determine whether to dismiss the case on *forum non conveniens* grounds: "(1) the deference to be accorded the plaintiff's choice of forum; (2) the adequacy of the alternative forum proposed by the defendants; and (3) the balance between the private and public interests implicated in the choice of forum." *Fasano v. Yu Yu*, 921 F.3d 333, 335 (2d Cir. 2019) (citing *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005)).  "Private interests may include such factors as the relative ease of access to sources of evidence, the availability of witnesses, and the enforceability of a judgment if one is obtained," and "[t]he

public interest may include such factors as court congestion, the interest in having local forums decide local disputes, avoiding the imposition of jury duty on persons within a community having little relation to the litigation, and a forum court's need to apply unfamiliar principles of foreign law." *Li*, 47 F.4th at 100 (citing *Gulf Oil Corp.*, 330 U.S. at 508-09).

However, "forum selection clauses require a substantial modification of the *forum non conveniens* doctrine, whereby the doctrine's usual tilt in favor of the plaintiff's choice of forum gives way to a presumption in favor of the contractually selected forum." *Martinez*, 740 F.3d at 218 (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)). "That presumption may be rebutted only if the objecting party 'clearly show[s] that' the clause's 'enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Li*, 47 F.4th at 101 (quoting *M/S Bremen*, 407 U.S. at 15).

Moreover, "[i]n the face of a presumptively valid forum selection clause, a showing of mere inconvenience to parties or witnesses is not sufficient; indeed, the court should consider arguments about 'public-interest factors only,' for '[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation.'" *Id.* at 101 (quoting *Atlantic Marine*, 571 U.S. at 64).

B.   **Interpretation of the Forum Selection Clauses**

As a threshold matter, the parties dispute the interpretation of the forum selection clause. The first forum selection clause designates the "commercial courts of New York," and the second forum selection clause designates the "courts of New York." ETS MIR contends that the forum selection clauses require suits to be adjudicated within the geographical boundaries of the State of New York and does not designate New York State courts to the exclusion of federal courts sitting in New York. The Court disagrees. The clauses in both contracts designate the

5

"courts *of* New York," not the courts "*in*" New York.  The Second Circuit recently adopted the "widely-accepted rule that forum selection clauses that use the term 'in a state' . . . permit[ ] jurisdiction in both the state and federal courts of the named state, whereas forum selection clauses that use the term 'of a state' . . . limit[ ] jurisdiction over the parties' dispute to the state courts of the named state." *Rabinowitz*, 75 F.4th at 84 (quoting *FindWhere Holdings, Inc. v. Sys. Env't Optimization, LLC*, 626 F.3d 752, 755 (4th Cir. 2010)); *see also Seafarers Pension Plan ex rel. Boeing Co. v. Bradway*, 23 F.4th 714, 721 (7th Cir. 2022) ("Most circuits treat forum-selection clause references to courts 'of' a state as not including federal courts in the state, but references to courts 'in' a state as including both state and federal courts located in the state."); *Simonoff v. Expedia, Inc.*, 643 F.3d 1202, 1205-06 (9th Cir. 2011); *New Jersey v. Merrill Lynch & Co.*, 640 F.3d 545, 548-49 (3d Cir. 2011); *Dixon v. TSE Int'l Inc.*, 330 F.3d 396, 398 (5th Cir. 2003) ("Federal district courts may be in [a state], but they are not of [that state].").

The Court thus concludes that the forum selection clauses designate New York State court as the forum.

### C.    Whether the Forum Selection Clauses Are Presumptively Enforceable

Having established the meaning of the forum selection clauses, the Court now considers whether the presumption of enforceability applies to those clauses.  "[T]he presumption of enforceability is not automatic." *Yu Yu*, 921 F.3d at 335.  "Instead, a district court must consider three factors in determining whether the presumption of enforceability applies to a forum selection clause: whether (1) the clause was reasonably communicated to the party resisting its enforcement; (2) the clause is mandatory or permissive; and (3) the claims and parties to the dispute are subject to the clause." *Id.* (citing *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 721 (2d Cir. 2013); *see also Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383-84 (2d Cir. 2007).  "If the district court concludes that the presumption applies, it must then

consider a fourth factor—whether the presumption of enforceability has been properly rebutted by 'a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Yu Yu*, 921 F.3d at 335-36 (quoting *Magi XXI, Inc.*, 714 F.3d at 721); *see also Phillips*, 494 F.3d at 384.

First, the Court determines whether the forum selection clause was reasonably communicated to the party resisting enforcement. ETS MIR does not dispute that the forum selection clause was reasonably communicated to it. Neither party disputes that it signed the contract that contained the forum selection clause, and thus, the clause was reasonably communicated to both parties. *See Cfirstclass Corp. v. Silverjet PLC*, 560 F. Supp. 2d 324, 328 (S.D.N.Y. 2008). Petroci contends that it had not intended to sign contracts that included forum selection clauses that selected a forum in the United States. (ECF No. 8-4 at 21-23.) However, Petroci does not dispute that it signed both five-page contracts directly below the forum selection clauses. (*See* ECF No. 10 at 5; ECF No. 12 at 5-6.) Furthermore, ETS MIR submitted evidence reflecting that Petroci engaged in an editing process through which Petroci proposed revisions to the forum selection clauses, thereby indicating that Petroci was aware of and understood the forum selection clauses at the time that Petroci signed the contracts. (*See* ECF No. 22-5.) Under these circumstances, the Court concludes that the forum selection clauses were reasonably communicated to Petroci.

Second, the Court must determine whether the forum selection clauses are mandatory or permissive. "Mandatory forum selection clauses 'require that disputes must be brought in the designated forum, to the exclusion of all other fora where jurisdiction may also lie.'" *Rabinowitz*, 75 F.4th at 82 (citing *Glob. Seafood Inc. v. Bantry Bay Mussels Ltd.*, 659 F.3d 221, 225 (2d Cir. 2011)). "By contrast, a permissive forum selection clause 'confers jurisdiction in

7

the designated forum, but does not deny plaintiff his choice of forum, if jurisdiction there is otherwise appropriate.'" *Id.* (citing *Glob. Seafood Inc.*, 659 F.3d at 225). "To classify a forum selection clause as mandatory, therefore, we look for specific language of exclusion." *Id.* "[A]n agreement conferring jurisdiction in one forum will not be interpreted as excluding jurisdiction elsewhere unless it contains specific language of exclusion." *John Boutari & Son, Wines & Spirits, S.A. v. Attiki Imps. & Distribs. Inc.*, 22 F.3d 51, 53 (2d Cir. 1994). The clause in the first contract states that "[t]he parties expressly consent to the exclusive jurisdiction of the commercial courts of New York," and the clause in the second contract states that "[t]he parties expressly consent to the exclusive jurisdiction of the courts of New York." (Compl. ¶ 37; ECF No. 8-10 Art. 15; ECF No. 8-12 Art. 15.) Both forum selection clauses include specific language of exclusion as they both provide that the courts of New York have "exclusive jurisdiction" over claims connected to the contracts. The Court therefore concludes the forum selection clauses are mandatory. *See Espire Ads LLC v. TAPP Influencers Corp.*, 655 F. Supp. 3d 223, 247-48 (S.D.N.Y. 2023) ("[The] forum selection clause is mandatory because it provides that California courts 'shall have exclusive' jurisdiction over claims arising out of, or connected with, the agreement.")

Third, the Court determines whether the parties and claims in the suit are subject to the forum selection clause. The complete text of the choice of law and forum selection clause of the first agreement states: "This Agreement shall be governed by and construed in accordance with the laws of the United States of America. The parties expressly consent to the exclusive jurisdiction of the commercial courts of New York." (Compl. ¶ 37; ECF No. 8-10 Art. 15.) The forum selection clause of the second agreement states the same with the variation that is specifies "the courts of New York." (Compl. ¶ 37; ECF No. 8-12 Art. 15.) These forum selection clauses

8

clearly apply to any claims related to the agreements, including ETS MIR's breach of contract claim, anticipatory breach of contract claim, and breach of the implied covenant of good faith and fair dealing. "Furthermore, [w]here broadly worded, a forum selection clause is not limited solely to claims for breach of the contract that contains it." *Espire Ads LLC*, 655 F. Supp. 3d at 248 (citing *KTV Media Int'l, Inc. v. Galaxy Grp., LA LLC*, 812 F. Supp. 2d 377, 385 (S.D.N.Y. 2011) (finding that a mandatory forum selection clause including the terms "arising out of" and "in connection with" covered claims which did not "arise out of" a contract but were "in connection with" that contract)). "Thus, 'a contractually-based forum selection clause will also encompass tort claims if the tort claims ultimately depend on the existence of a contractual relationship between the parties.'" *Id.* (citing *Cfirstclass Corp.*, 560 F. Supp. 2d at 329, 330 (noting that the contract at issue only contained the phrase "arising out of," and discussing the possibility that a forum selection clause including the phrase "arise in connection with" could have a greater scope)). Here, the forum selection clauses are narrow in scope as they do not include language specifying that they encompass all claims "arising out of" or "in connection with" the contracts. Nevertheless, neither party argues that the forum selection clauses are too narrow to encompass ETS MIR's defamation and trade libel claims. (ECF No. 22 at 20.) The Court thus concludes that the parties have waived this argument, and that the forum selection clauses encompass all claims in this suit.

Because the forum selection clauses were communicated to the resisting party, have mandatory force, and cover the claims and parties involved in the dispute, the clauses are presumptively enforceable.

### D.  Whether the Presumption of Enforceability Is Rebutted

The presumption of enforceability may be rebutted only if the objecting party "clearly show[s] that" the clause's "enforcement would be unreasonable and unjust, or that the clause was

invalid for such reasons as fraud or overreaching." *Li*, 47 F.4th at 101 (citing *M/S Bremen*, 407 U.S. at 15). ETS MIR does not assert that enforcement of the forum selection clause would be unreasonable and unjust or that the clause is the product of fraud or overreaching. Petroci contends that ETS MIR employed deceitful and fraudulent tactics to induce Petroci to unknowingly enter into a contract with ETS MIR instead of Etablissement MIR SARL. (ECF No. 8-4 at 21-23.) Petroci submits that Coulibaly acted for both ETS MIR and Etablissement MIR SARL and gave Petroci the false impression that the two entities were the same company. (ECF No. 8-1 ("Bery Decl.") ¶¶ 14-22.) According to Petroci, this is in part due to the two companies having similar names and the fact that the term "ETS" is the French abbreviation for "établissement." (*Id.* ¶ 19.) Although ETS MIR's address in South Dakota is stated in both contracts, neither contract includes ETS MIR's designation as an LLC. (*Id.* ¶ 20.) Moreover, Petroci contends that following the initial contract between Petroci and Etablissement MIR SARL, Coulibaly corresponded with Petroci seeking to collect money owed on that initial contract using the letterhead of ETS MIR in South Dakota. (*Id.* ¶ 22.)

These arguments pertain to alleged fraud in the inducement of the contractual relationship itself. "While a court will not enforce a forum selection clause when it is 'the result of fraud or overreaching,' the fraud must be related to the clause itself, not the contractual relationship between the parties more generally." *Amto, LLC v. Bedford Asset Mgmt., LLC*, 168 F. Supp. 3d 556, 570 (S.D.N.Y. 2016) (citing *Novak v. Tucows, Inc.*, No. 06-CV-1909, 2007 WL 922306, at *10 (E.D.N.Y. Mar. 26, 2007), *aff'd*, 330 F. App'x 204 (2d Cir. 2009) ("[W]here a party attempting to defeat a forum-selection clause alleges fraud, courts must look to whether *the inclusion of the clause itself was fraudulent*." (emphasis added))); *see also Person v. Google Inc.*, 456 F. Supp. 2d 488, 494 (S.D.N.Y.2006) ("[T]he fraudulent actions capable of overcoming the

presumption of validity for a forum selection clause must be directly related to that clause, not the contract more generally.")

As to the forum selection clauses themselves, Petroci submits that "such important changes were never brought to the attention of the employees in charge of the negotiation of the contracts" and these employees "were led to believe that the stipulations in the original contract" between Petroci and Etablissement MIR SARL "remained unchanged." (Bery Decl. ¶ 17.) But as discussed above, Petroci does not dispute that it signed both five-page contracts directly below the forum selection clauses. (*See* ECF No. 10 at 5; ECF No. 12 at 5-6.) Nor does Petroci dispute that it engaged in an editing process through which it proposed revisions to the forum selection clauses. (*See* ECF No. 22-5.) Thus, the Court concludes that Petroci has not made a "clear showing" that the clauses are invalid due to fraud. *Li*, 47 F.4th at 101 (citing *M/S Bremen*, 407 U.S. at 15).

### E.  Consideration of Public Interest Factors

Finally, as the Court has established that the forum selection clauses are presumptively enforceable, the Court "may consider arguments about public-interest factors only." *Atl. Marine Const. Co.*, 571 U.S. at 64. "Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.* "The public interest may include such factors as court congestion, the interest in having local forums decide local disputes, avoiding the imposition of jury duty on persons within a community having little relation to the litigation, and a forum court's need to apply unfamiliar principles of foreign law." *Li*, 47 F.4th at 100 (citing *Gulf Oil Corp.*, 330 U.S. at 508-09).

The parties' arguments on this point address whether the public interest factors weigh in favor of dismissing this case from the Southern District of New York in favor of *Cote d'Ivoire* as the proper forum. (ECF No. 8-4 at 18-21; ECF No. 22 at 21-24.) The relevant inquiry at

present, however, given this Court's interpretation of the forum selection clauses, is how the public interest factors apply as between the Southern District of New York and *New York State court*. The parties do not brief this issue. Thus, even if the public interest factors were pertinent here, the Court has no basis for concluding that this is the "unusual case" where those factors override an otherwise enforceable forum selection clause.

Accordingly, the claims against Petroci are dismissed without prejudice to refiling in New York State court.

### III. Claims Against Bamba

A court must dismiss an action *sua sponte* if the court determines that it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3). Having dismissed ETS MIR's claims against Petroci, the Court lacks subject matter jurisdiction to adjudicate ETS MIR's claims against Bamba, and therefore must dismiss ETS MIR's claims against Bamba as well.

The Court had subject matter jurisdiction over ETS MIR's claims against Petroci pursuant to the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. §§ 1330(a) and 1605(a)(2). The FSIA "provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country." *Rogers v. Petroleo Brasileiro, S.A.*, 673 F.3d 131, 136 (2d Cir. 2012) (quoting *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989)). Under the FSIA, "a foreign state [is] immune from the jurisdiction of the courts of the United States and of the States except as provided" by certain statutory exceptions. 28 U.S.C. § 1604. The parties do not dispute that Petroci is an instrumentality of Cote d'Ivoire, 28 U.S. Code § 1603(b), or that the commercial activity exception applies, 28 U.S. Code § 1605(a)(2).

In its Second Amended Complaint, ETS MIR alleges that the Court also has subject matter jurisdiction based on diversity of citizenship, 28 U.S.C. § 1332. (ECF No. 41 ("Second Amended Compl.") ¶ 13.) ETS MIR is incorrect. For purposes of diversity jurisdiction, an LLC

has the citizenship of each of its members. *See ICON MW, LLC v. Hofmeister*, 950 F. Supp. 2d 544, 546 (S.D.N.Y. 2013) (citing *Bayerische Landesbank v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012)). Thus, in order to invoke this Court's diversity jurisdiction, ETS MIR must allege that the citizenship of each of its members is diverse from that of Bamba at the date of this action's filing. ETS MIR alleges that is has a single member, Coulibaly, who is a citizen and resident of Cote d'Ivoire. (Second Amended Compl. ¶ 2.) Because Bamba is also a domiciliary of Cote d'Ivoire (*Id.* ¶ 8), this Court lacks subject matter jurisdiction under 28 U.S.C. § 1332. *See, e.g., Knight v. Standard Chartered Bank*, 531 F. Supp. 3d 755, 773 (S.D.N.Y. 2021).

The Court therefore dismisses ETS MIR's claims against Bamba for lack of subject matter jurisdiction.

### IV.   Conclusion

For the foregoing reasons, Petroci's and Bamba's motions to dismiss are GRANTED. All claims are hereby dismissed without prejudice to refiling in New York State court.

The Clerk of Court is directed to close the motions at ECF Nos. 8 and 44 and to close this case.

SO ORDERED.

Dated: March 20, 2024
       New York, New York

_____
J. PAUL OETKEN
United States District Judge